UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS INC., | Case No.: 1:14-cv-01427 - WBS - JLT |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| v. | |
| JOSE MEZA, individually and doing business as LATINO BARBER SHOP, | (Doc. 11) |
| Defendant. | |

Plaintiff J & J Sports Productions, Inc. seeks the entry of default judgment against Defendant Jose Meza, individually and doing business as Latino Barber Shop. (Doc. 11.) Defendant has not opposed this motion. The Court found the matter suitable for decision without an oral hearing pursuant to Local Rule 230(g), and the matter was taken under submission on April 8, 2015. (Doc. 16.) For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED IN PART**.

I. **Procedural History**

Plaintiff filed its complaint against Defendant on September 12, 2014, asserting it possessed the exclusive rights to the nationwide commercial distribution of "'The One' Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program" ("the Program") televised on September 14, 2013. (Doc. 1 at 4, ¶ 14.) Defendant was served with the complaint, but failed to

1

respond within the time prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiff, default was entered against Defendant on February 18, 2015. (Docs. 6, 9.) Plaintiff filed the application for default judgment now pending before the Court on March 18, 2015. (Doc. 11.)

## II.  Legal Standards Governing Entry of Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

## III.  Plaintiff's Factual Allegations

The factual assertions of Plaintiff are taken as true because default has been entered against Defendant. *See Pope*, 323 U.S. at 22. Plaintiff alleges that by contract, it was granted exclusive domestic commercial distribution rights to the Program and, pursuant to that contract entered into sublicensing agreements with various commercial entities throughout North America to broadcast the

1  Program within their establishments.  (Doc. 1 at 4 ¶¶ 14-16.)  Plaintiff asserts Defendant was "an
2  owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual
3  with dominion, control, oversight and management of the commercial establishment doing business as
4  Latino Barber Shop."  (*Id.* at 3, ¶ 7.)

5        Plaintiff alleges Defendant broadcast the Program in Latino Barber Shop without purchasing a
6  proper sublicense from Plaintiff.  (Doc. 1 at 3, ¶ 11.)  For this act, Plaintiff alleged violations of 47
7  U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and Professions Code.
8  (*Id.* at 3-9.)  In the application for default judgment, Plaintiff requests damages for the violation of 47
9  U.S.C. § 605 and conversion.  (*See* Doc. 11-1.)  Therefore, the Court will address only these claims.

10 **IV.   Discussion and Analysis**

11       Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh
12 in favor of granting Plaintiff's motion for default judgment.

13       **A.   Prejudice to Plaintiff**

14       The first factor considers whether the plaintiff would suffer prejudice if default judgment is not
15 entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment.  *See*
16 *Pepsico, Inc.*, 238 F. Supp. 2d at 1177.  Generally, where default has been entered against a defendant,
17 a plaintiff has no other means by which to recover damages.  *Id.*; *Moroccanoil, Inc. v. Allstate Beauty*
18 *Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012).  Therefore, the Court finds Plaintiff would be
19 prejudiced if default judgment is not granted.

20       **B.   Merits of Plaintiff's claims and the sufficiency of the complaint**

21       Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive
22 claims and the sufficiency of the complaint together.  *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S.
23 Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012).  The Ninth Circuit has suggested that, when
24 combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover."  *Pepsico,*
25 *Inc.*, 238 F. Supp. 2d at 1175.

26       1.   Claim arising under 47 U.S.C. § 605

27       The Federal Communications Act of 1934 ("Communications Act") "prohibits the unauthorized
28 receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled

thereto.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (citing 47 U.S.C. § 605(a)). In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the … contents … of such intercepted communication to any person." 47 U.S.C. § 605(a). Thus, Plaintiff must establish it was the party aggrieved by Defendant's actions. 47 U.S.C. § 605(e)(3)(A). Plaintiff must also show Defendant intercepted a wire or radio program and published it without permission. 47 U.S.C. § 605(a).

      *a.*  *Party aggrieved*

Under the Communications Act, a "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6). In the Complaint, Plaintiff asserted that J & J Sports Productions was granted the exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 4, ¶ 14.) In support of this assertion, Joseph Gagliardi, President of J & J Sports Productions produced the Closed Circuit Television License Agreement between Golden Boy Promotions, LLC and Plaintiff, granting Plaintiff "the exclusive license to exhibit . . . [the] live telecast" of the Program. (Doc. 11-4 at 10-15.) Accordingly, the Court finds Plaintiff was the party aggrieved within the meaning of Section 605.

      *b.*  *Interception and publication of the Program*

Plaintiff acknowledges it "cannot be certain of the method of interception." (Doc. 11-1 at 9). Similarly, in *Joe Hand Prod. v. Behari*, 2013 U.S. Dist. LEXIS 37277 (E.D. Cal. Mar. 18, 2013), the plaintiff was unable to identify the nature of the transmission. This Court observed: "Plaintiff's inability to allege the precise nature of the intercepted transmission in this case …raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Id.*, 2013 U.S. Dist. LEXIS 37277 at *7. Nevertheless, Plaintiff provided evidence that Defendant broadcast the Program in his establishment, because an investigator witnessed the Program broadcast at Latino Barber Shop. (Doc. 11-3.)

Because Plaintiff was a party aggrieved, and Defendant intercepted the Program and published it without permission, Plaintiff has established the elements of a claim under the Communications Act.
///

### 2. Conversion

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Previously, this Court determined the possession of "a right to distribute programming" constitutes ownership of properly for purposes of conversion. *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (citing *Don King Prods./ Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to possess the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the distribution rights, the company held a "right to possession of property." Further, Plaintiff alleged facts sufficient to support a finding that Defendant engaged in signal piracy by broadcasting the Program without a sublicense. The investigator estimated the capacity of the establishment to be 35 people, and counted 25 individuals at Latino Barber Shop. (Doc. 11-3 at 2.) The rate sheet indicates a sublicense cost $2,200.00 for an establishment with the capacity up to 100 persons. (Doc. 11-4 at 17.) Consequently, Plaintiff has established damages in the amount of $2,200.00, and states a claim for conversion against Defendant.

### C. Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff seeks compensatory damages for the tortuous conversion of Plaintiff's property. In addition, Plaintiff requests statutory damages totaling $36,600 for the violation of 47 U.S.C. § 605. (Doc. 11- 5 at 2.) Notably, "the statutes involved contemplate such an award under certain circumstances." *See G & G Closed Events, LLC v. Shahen*, 2012 U.S. Dist. LEXIS 58723, at *18 (E.D. Cal. Apr. 26, 2012). Consequently, this factor does not weigh against the entry of default judgment.

///

### D. Possibility of dispute concerning material facts

Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendant failed to appear. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether Defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Defendant was served with the Summons and Complaint, as well as the motion for default judgment. (*See* Doc. 11 at 4.) Given these facts, it is unlikely that Defendant's actions were the result of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). Accordingly, this factor does not weigh against default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendant's failure to appear before the Court and defend in this action makes a decision on the merits impractical.

## V. Damages

Under the Communications Act, a party aggrieved may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). When the Court determines a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii). The Court has "wide discretion" to determine the proper amount of damages to be awarded.

*DirecTV Inc. v. Le*, 267 Fed, App'x 636 (9th Cir. 2008) (citation omitted).

The Court may consider a number of factors in its determination of the amount of damages, including any promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, the imposition of a cover charge, the number and size of the televisions used for the broadcast, and whether a premium was charged on food or drink. *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 at * 10-11 (E.D. Cal. Sept. 6, 2011) (citing *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).

Gilbert Tate, Plaintiff's investigator, noted he "paid $10 to enter" Latino Barber Shop.  (Doc. 11-3 at 2.)  Mr. Tate observed the Program broadcast on a single 32" flat screen television, located on the back wall, above a mirror. (*Id.*)  Mr. Tate counted 25 people, and estimated the capacity of Latino Barber Shop was "approximately 35 people." (*Id.*)  Plaintiff has not identified any evidence that Defendant is a repeat offender.  Given these factors, the Court finds an award of $10,000, which is approaching five times the cost of a proper sublicense and the maximum that can be awarded, to be appropriate.[1]

Further, Plaintiff seeks an award of enhanced damages, arguing that the issue of "whether Defendant acted willfully and for financial gain . . . is conclusively established by the $10.00 cover charge."  (Doc. 11-1 at 13.)  An award of enhanced damages is appropriate where the defendant imposes a cover charge or admission fee.  *See, e.g., J & J Sports Prods. v. Cano*, 2013 U.S. Dist. LEXIS 67078 (E.D. Cal. May 10, 2013) (awarding enhanced damages where the patrons paid a cover charge); *Joe Hand Promotions, Inc. v. Burleson*, 2011 U.S. Dist. LEXIS 119191 (E.D. Cal. Oct. 14, 2011) (awarding $3,000 in enhanced damages where patrons  were told they could either pay a [$5] cover charge to watch the fight or order a plate of 'all you can eat wings for $11.99'"); *J & J Sports*

---

[1] Courts in this district have found that the statutory maximum is not an appropriate award for a first-time offender and in the absence of aggravating factors.  *See, e.g., J & J Sprots Prod. v. Corona*, 2013 U.S. Dist. LEXIS 96462 (E.D. Cal. July 10, 2013) (awarding $7,000 in damages where the defendant broadcast the program on two televisions, there was no premium for food or drink); *Joe Hand Promotions v. Brown,* 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010) (awarding $4,000 in damages where the program was broadcast on six 60-inch televisions, and there was no premium for food or drink); *J & J Sports Productions, Inc. v. Morales*, 2012 U.S. Dist. LEXIS 30942 (E.D. Cal. March 8, 2012) (awarding $4,400 in statutory damages where the sublicense cost $2,200 for the broadcast that the defendants displayed on three televisions, ranging in size up to 54"); *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 (E.D. Cal. Sept. 6, 2011) (awarding $3,600 in statutory damages, an amount two times the cost of a sublicense).

*Prods. v. Epsinoza*, 2014 U.S. Dist. LEXIS 82518 (E.D. Cal. June 17, 2014) (declining to award enhanced damages where the investigator did not pay a cover charge and there was "no evidence of a repeat violation or additional egregious circumstances"). Because the facts presented to the Court establish that Defendant acted willfully and for the purposes of financial gain by imposing a $10 cover charge, the award of enhanced damages is appropriate.

Significantly, however, the amount of enhanced damages appears excessive. When determining the amount of damages to be awarded for signal piracy, "the principle of proportionality governs." *Backman*, 102 F.Supp.2d at 1198. Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Id.* Moreover, the Ninth Circuit encourages the entry of "a sanction that deters but does not destroy." *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 2009). Here, Mr. Tate estimated the capacity of Latino Barber Shop to be 35 people, and it appears to be a small business. (Doc. 11-3 at 2, 4.) Based upon the facts presented, an award of $5,000 in enhanced damages is appropriate. *See, e.g. Cano*, 2013 U.S. Dist. LEXIS 67078 (awarding $5,000 in enhanced damages where the patrons paid a $7 cover charge and the fight was broadcast on four television sets and one projector); *Garden City Boxing Club, Inc. v. Lan Thu Tran,* 2006 U.S. Dist. LEXIS 71116, 2006 WL 2691431, at *2 (N.D. Cal. Sept. 20, 2006) (awarding minimal statutory damages and $5,000 in enhancement damages when 40 persons were present and the defendant imposed a $10 cover charge).

Finally, because Plaintiff chose to receive statutory damages rather than actual damages under the Communications Act, damages for conversion are subsumed into the total award. *See, e.g., Joe Hand Promotions, Inc. v. Behari*, 2013 U.S. Dist. LEXIS 37277 at *8, n.2 (E.D. Cal. Mar. 18, 2013) (explaining damages conversion would not be awarded "because the recommended statutory damages will sufficiently compensate plaintiff such that an award for conversion damages would be duplicative"); *J &J Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal. Mar. 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory scheme" where the award total was $3,200 and the cost of the proper license was $2,200); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (E.D. Cal. May 7, 2010) (declining conversion damages because statutory damages "sufficiently

compensate[d]" the plaintiff).

## VI. Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. However, the damages requested are disproportionate to Defendant's actions.

Accordingly, the Court recommends the award of $13,000 for Defendant's wrongful acts. This amount both compensates Plaintiff for the wrongful act and is a suitable deterrent against future acts of piracy. *See Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) (observing that a lower statutory award may deter while not destroying a business).

Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's application for default judgment (Doc. 11) be **GRANTED IN PART AND DENIED IN PART AS FOLLOWS**:
    A. Plaintiff's request for statutory damages for the violation of the Communications Act be **GRANTED** in the amount of $$10,000;
    B. Plaintiff's request for enhanced damages be **GRANTED** in the amount of $5,000;
    C. Plaintiff's request for damages for the tort of conversion be **DENIED**;
2. Judgment be entered in favor of Plaintiff J & J Sports Productions, Inc. and against Defendant Jose Meza, individually and doing business as Latino Barber Shop; and
3. Plaintiff be directed to file any application for attorney's fees pursuant to 47 U.S.C. § 605 no later than fourteen days from the entry of judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153

(9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **April 17, 2015**                    **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE